**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: JAMES C. HOFFMAN, | : | Bankruptcy No. 15-10156 (JKS) |
| Debtor. | : | |
| | : | |
| JAMES C. HOFFMAN, | : | CIVIL ACTION NO. 16-3368 (JLL) |
| Appellant, | : | **O P I N I O N** |
| v. | : | |
| OCWEN LOAN SERVICING, LLC, | : | |
| Appellee. | : | |

**LINARES, District Judge**

James C. Hoffman is a debtor, and he petitioned for Chapter 11 bankruptcy protection. Hoffman appeals from a May 23, 2016, order of the United States Bankruptcy Court, which granted a motion by one of his creditors, Ocwen Loan Servicing, LLC (hereinafter, "OLS"), to bar a modification of OLS's claim against real property owned by Hoffman located in Bloomingdale, New Jersey, pursuant to 11 U.S.C. § 1123(b)(5).[1]  OLS files a brief in opposition to the appeal.  (See dkt. 6.)  For the

---

[1] See dkt. 1 (Hoffman's Notice of Appeal); dkt. 1-1 (the Bankruptcy Court order appealed from); dkt. 1-4 (the opinion underlying the order appealed from); dkt. 3 (Hoffman's appeal brief); dkt. 4 (Hoffman's appendix to the appeal brief); dkt. 4-6 at 20–48 (the transcript of

following reasons, the Court will affirm the Bankruptcy Court order from which Hoffman appeals.

## BACKGROUND

### I.    11 U.S.C. 1123(b)(5)

A bankruptcy plan "may . . . modify the rights of holders of secured claims, <u>other than a claim secured only by a security interest in real property that is the debtor's principal residence</u>." 11 U.S.C. 1123(b)(5) (emphasis added).  If a first mortgage covers a bankruptcy debtor's principal residence, then the debt cannot be modified downward even if it exceeds the property's value, and thus a creditor is entitled to recover the full amount owed by a debtor on a mortgage.  However, if a mortgage covers property that contains something more than a debtor's principal residence, such as a multi-family house, then the debt can be "crammed down" to the property's value, to the point where a creditor will be left with (1) a secured claim for an amount equal to the property's value, and (2) an unsecured claim for the difference between the debt owed and the property's value.  See <u>In re Homitz</u>, No. 13-23757, 2014 WL 3721998, at *3–4 (Bankr. W.D. Pa. July 24, 2014) (describing the cram-down procedure); <u>In re Harris</u>, No. 10-74280, 2011 WL 5508861, at *2–3 (Bankr. E.D. Mich. Nov. 7, 2011) (describing same).

---

the oral argument underlying the order appealed from); dkt. 8 (Hoffman's reply brief).  The Court will refer to documents by the docket entry numbers and the page numbers imposed by the Electronic Case Filing System when citing to the record from this point forward, unless further explanation is necessary.

## II.    Facts

The Court writes for the parties, and will assume a familiarity with the facts and will not recount them in detail except as necessary for this appeal.  Hoffman has owned the property in issue since 2001, and he refinanced his mortgage on that property in 2007.  (See dkt. 4-4 at 21 (Hoffman's 2007 refinancing application, which indicates that he had been living on the property for 6 years).)  Hoffman has now defaulted on that loan.  The amount that Hoffman currently owes, i.e., $507,985.94, exceeds the current value of the property, i.e., $276,000.  (See dkt. 1-4 at 4.)

In the proposed bankruptcy plan, Hoffman sought pursuant to Section 1123(b)(5) to cram down the debt owed to OLS, which is the servicer of Hoffman's mortgage, by arguing that the debt is secured by property that contains his principal residence and a detached guest house.  (See dkt. 4-1.)  As a result, Hoffman sought to split OLS's claim into:  (1) a secured claim in the amount of $276,000; and (2) an unsecured claim for the remaining amount of the debt.  OLS objected to this portion of the bankruptcy plan, and moved to prohibit Hoffman from cramming down the debt owed to OLS.

Hoffman argued in support of his proposed modification that the appraisal performed for the refinancing application listed the property as having one unit with an accessory unit, that the appraisal contained a sketch of the entire property that included a guest house, and that it contained photographs depicting a "guest house/in law suite" (albeit in a dilapidated state).  (See dkt. 1-4 at 5; dkt. 4-3 at 1–3; dkt. 4-4 at 12 & 18.)  Hoffman also argued that the portion of the refinancing application entitled "Schedule of

Real Estate Owned" listed "2–4" in the column for the type of property, which signified that the property contained more than one living structure. (See dkt. 4-2 at 30; dkt. 4-6 at 27.) In addition, he argued that the guest house was rented out intermittently between 2005 and 2010, but he admitted that it: (1) was not rented out when he applied for refinancing and when the mortgage was finalized in 2007; and (2) has been in a state of disrepair for some time. (See dkt. 1-4 at 5; dkt. 4-6 at 25.)

In opposition to the modification, OLS argued that Hoffman himself stated in the refinancing application that the entire property would be used for his main residence only, and that the mortgage describes the property as containing only one main residence together with all improvements. (See dkt. 4-2 at 35; dkt. 4-2 at 38.) In addition, OLS argued that Hoffman left blank the portion of the application that required him to disclose any rental income from his property. (See dkt. 4-2 at 29.) Furthermore, OLS pointed out that Hoffman certified at the closing that he and his wife were in sole possession of the property, with no tenants or other occupants. (See dkt. 4-2 at 35.) OLS also argued that Hoffman did not execute an assignment of rents in connection with the mortgage, and that the mortgage has no riders indicating that other families would be living on the property. (See dkt. 1-4 at 5; dkt. 4-6 at 44.)

The Bankruptcy Court acknowledged that the record contained evidence that was "conflicting." (Dkt. 4-6 at 45.) The Bankruptcy Court then addressed this matter pursuant to the controlling precedent from the Third Circuit Court of Appeals concerning the application of Section 1123(b)(5) to a bankruptcy plan, which requires a court to

inquire "(1) whether the claim is secured only by real property, and (2) whether the real

property is the debtor's principal residence." See In re Scarborough, 461 F.3d 406, 411

(3d Cir. 2006).  In doing so, again pursuant to the controlling precedent, the Bankruptcy

Court focused on the time period when the refinancing application was pending and when

the underwriting decisions were being made, and thus when a lender would be deemed to

be aware that the loan could be subject to a modification pursuant to Section 1123(b)(5).

See In re Scarborough, 461 F.3d at 412.

     The Bankruptcy Court, in its thorough and well-reasoned analysis following oral

argument, went on to conclude the following:

> Here, the closing documents state clearly in several places that the
> Property was going to be used as [Hoffman's] principal residence and was
> not rented to third parties.  The mortgage lender asked for, and had the right
> to rely on, these representations.  None of the documents executed at the
> time of the loan indicate that the guesthouse was separate collateral for the
> loan.  [Hoffman] did not execute an assignment of rents and the mortgage
> does not reference any property other than the real property located at
> [Hoffman's address in] Bloomingdale, New Jersey.  The affidavit of title
> confirms that [Hoffman] and his spouse were in sole possession of the
> Property and that there were no tenants or other occupants.  Even though
> the numbers "2–4" are entered under the "Type of Property" column in the
> "Schedule of Real Estate Owned" on the loan application, this is of limited
> probative value given the numerous representations throughout the loan
> application indicating that the Property consists of one unit and did not
> generate income.  For instance, adjacent columns in the same schedule that

call for "Gross Rental Income" and "Net Rental Income" from the Property are left blank. The "Net Rental Income" column in the income section of the loan application is also left blank. Finally, although the guesthouse may have been rented out intermittently between 2005 and 2010, [Hoffman] concedes that it was vacant and did not generate any income at the time of the loan, which is the only time that matters under *Scarborough*.

[Hoffman] argues that the mere fact that the guesthouse had income generating potential at the time of closing is enough under *Scarborough* to allow the loan to be modified. But . . . "the issue of whether a property was a single family residence is more than whether a property contains two units. The actual use of a property should be considered." *In re Lopez*, 511 B.R. 517, 520-21 (Bankr. N.D. Ill. 2014). The guesthouse on [Hoffman's] Property had many possible uses that would not produce revenue—a room for nonpaying guests or family members, a studio, a workshop, a home office, or just extra storage space. Indeed, the representations by [Hoffman] at closing reflect that the guesthouse was and would be used as part of [Hoffman's] principal residence, not a separate income-producing unit. Thus, the evidence indicates that the loan was not secured by any property other than [Hoffman's] principal residence at the time of the loan.

. . . .

[T]he Court finds that [Hoffman's] proposed modification of [OLS's] claim is prohibited under section 1123(b)(5). It would be inequitable to allow [Hoffman] to represent that the Property is a single-family, non-income producing principal residence and then disregard this representation in [Hoffman's] bankruptcy proceedings. Such a result would be contrary to the purpose of the anti-modification provision, which was

intended to . . . encourage the flow of capital into the home lending market
by affording anti-modification protection to home mortgage lenders[.]

(Dkt. 1-4 at 8–10 (quotation marks, citations, and footnotes omitted); see also dkt. 4-6 at
20–48.)

## ANALYSIS

A federal district court has jurisdiction to hear an appeal from a bankruptcy court's
final judgment, order, and decree.  See 28 U.S.C. § 158(a).  The district court reviews a
bankruptcy court's legal determinations de novo and its factual findings for clear error.
See In re Wettach, 811 F.3d 99, 104 (3d Cir. 2016).  The district court may find that the
factual findings of a bankruptcy court are clearly erroneous only "if they are completely
devoid of a credible evidentiary basis or bear no rational relationship to the supporting
data."  In re Macri, 642 Fed.Appx. 128, 128–29 (3d Cir. 2016) (quotation marks and
citation omitted).

Hoffman argues that the Bankruptcy Court erred upon finding that the loan was
secured by only a principal residence.  However, the Court discerns no legal errors upon
a de novo review of the Bankruptcy Court's legal determinations.  The Bankruptcy Court
correctly found — as it was required to do by the holding in In re Scarborough — that
when determining whether more than a principal residence is on the property in issue,
"the critical moment is when the creditor takes a security interest in the collateral. . . . It is
at that point in time that the underwriting decision is made and it is therefore at that point
in time that the lender must know whether the loan it is making may be subject to

modification in a [bankruptcy] proceeding at some later date." In re Scarborough, 461 F.3d at 412. The Bankruptcy Court thus correctly focused on the time period covering the refinancing application process.

Furthermore, upon a review of the oral argument transcript and the opinion underlying the order of the Bankruptcy Court, the Court discerns no clear error with the Bankruptcy Court's factual determinations concerning the characterization of Hoffman's property. Contrary to Hoffman's arguments on appeal, the Bankruptcy Court carefully considered the factors that favored Hoffman's position, i.e., that the "Schedule of Real Estate Owned" listed "2–4" in the column for type of property, that the appraisal noted an accessory unit on the property, and that the additional structure may have had intermittent tenants between 2005 and 2010. (Cf. dkt. 3 at 19 (Hoffman arguing on appeal that the Bankruptcy Court "discounted the inconsistencies in that loan application and completely ignored the property description and drawings of the property in the lender's appraisal").).)

The Bankruptcy Court then found that those factors favoring Hoffman were outweighed by the other evidence in the record, which included: (1) Hoffman's admission that the other structure was not rented out during the time of the refinancing application process in 2007; (2) Hoffman's assertion in the application that all of the structures on the property were part of his principal residence; (3) the description of the property in the mortgage stating that it contained only one main residence together with all improvements; (4) Hoffman's failure to enter any information on the portion of the application that required him to disclose rental income; (5) the absence of an assignment

by Hoffman of rents in connection with the mortgage; and (6) Hoffman's certification at the closing that he and his wife were in sole possession of the property, with no tenants or other occupants. (See dkt. 1-4 at 5.)[2] This Court finds that the Bankruptcy Court's conclusions were supported by credible evidence and that they were rational.

## CONCLUSION

The Court will therefore affirm the May 23, 2016, order of the United States Bankruptcy Court. The Court will enter an appropriate order.



**JOSE L. LINARES**
United States District Judge

**Dated:** October _____3rd____, 2016

---

[2] OLS also argues in its appellee brief that Hoffman has neither provided his tax returns from 2005 through 2010, nor submitted proof that he registered as a landlord with the municipality, in order to support his contention that he rented his property at all from 2005 through 2010. (See dkt. 6 at 16.) Hoffman offers no response to this argument in his reply brief. (See generally dkt. 8.)